TRACY L. WILKISON
Acting United States Attorney
BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division
STEVEN M. ARKOW
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6975
     Facsimile: (213) 894-6269
     E-mail:    steven.arkow@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>          v.<br><br>HIROYUKI KODAMA,<br><br>       Defendant. | No. CR 20-624-FMO<br><br>GOVERNMENT'S COMBINED CONCURRENCE IN THE FINDINGS OF THE PRESENTENCE INVESTIGATION REPORT AND POSITION RE: SENTENCING OF DEFENDANT HIROYUKI KODAMA<br><br>**Sentencing: June 17, 2021** |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Steven M. Arkow, files the *Government's Combined Concurrence in the Findings of the Presentence Investigation Report and Position Re: Sentencing of Defendant Hiroyuki Kodama*.

    The government's position is based upon the attached memorandum of points and authorities, the plea agreement (CR 6), the files and records in this case, the Presentence Investigation Report (CR 27),

//

the Disclosed Probation Recommendation Letter (CR 26), and such further evidence and argument as the Court may permit.

Dated: May 26, 2021                    Respectfully submitted,

                                       TRACY L. WILKISON
                                       Acting United States Attorney

                                       BRANDON D. FOX
                                       Assistant United States Attorney
                                       Chief, Criminal Division

                                       _____
                                       STEVEN M. ARKOW
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

## TABLE OF CONTENTS

DESCRIPTION                                                                        Page

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION AND THE PRESENTENCE INVESTIGATION REPORT..........1

II.   OFFENSE CONDUCT...............................................2

III.  POST—OFFENSE CONDUCT..........................................5

IV.   ADVISORY SENTENCING GUIDELINES................................6

V.    CONCURRENCE IN THE FINDINGS OF THE PRESENTENCE REPORT.........6

VI.   GOVERNMENT'S ANALYSIS OF THE SECTION 3553(a) FACTORS AND
      SENTENCING RECOMMENDATION.....................................7

      A.    18 U.S.C. § 3553 (a)(1)................................9

      B.    18 U.S.C. § 3553(a)(2)................................10

      C.    Restitution...........................................11

VII.  CONCLUSION...................................................13

i

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION AND THE PRESENTENCE INVESTIGATION REPORT

3

4          On January 14, 2021, defendant Hiroyuki Kodama ("defendant")

5  pleaded guilty, pursuant to a plea agreement (CR 6) to a one-count

   information, charging a violation of 18 U.S.C. § 1344 (bank fraud)
6
   filed on December 17, 2020 (CR 1).
7
           The United States Probation & Pretrial Services Office
8
   ("Probation Office") issued its Probation Disclosed Recommendation
9
   Letter (CR 26) and Presentence Investigation Report ("PSR") on May
10
   12, 2021 (CR 27).  In the PSR, the Probation Office calculated a
11
   total offense level of 22,[1] including a three-level reduction for
12
   acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(b) and a
13
   criminal history category of I based on zero criminal history points
14
   (CR 27 at ¶¶ 30-46), which is the same as the plea agreement's
15
   stipulated calculation of the offense level at 22 (CR 6 at ¶ 13),
16
   resulting in a PSR advisory guidelines range of 41-51 months.
17
           The government believes a two-level downward variance, as
18
   contemplated in the plea agreement, is an appropriate downward
19
   variance.  The two-level downward variance in the plea agreement is
20
   based on recognition of defendant's early acceptance of
21
   responsibility and agreement to hold these proceedings by VTC which
22
   lessens the burden on the court system.  (CR 26, Probation Disclosed
23
   Recommendation Letter at 4; PSR ¶¶ 3-5).
24

25

26

27
           [1] The PSR uses the edition of the United States Sentencing
28 Guidelines currently in effect (the manual in effect as of November
   2018).  (PSR ¶ 28).

The Probation Office has not identified any factors that warrant a departure from the applicable guidelines range, but has identified defendant's background and characteristics and the parties' agreement as factors that warrant a sentence below the advisory guidelines system (PSR ¶¶ 117-19) and, accordingly, recommends a downward variance to a sentence of 24 months, which translates into a downward variance of five levels from the low end of offense level 22 (41-51 months) to offense level 17 (24-30 months), which is three additional levels beyond the downward variance of two levels in the plea agreement from offense level 22 (41-51 months) to offense level 20 (33-41).

For the reasons set forth below, the government believes that the two-level downward variance is appropriate pursuant to a post-variance sentencing guidelines range of 33-41 months.  The government requests that the Court consider this range (33-41 months) as well as the remaining factors that 18 U.S.C. § 3553(a) mandates be considered, discussed below, when fashioning a sentence that is sufficient but not more than necessary to address the goals of sentencing and that appropriately balances the mitigating and aggravating factors present in this case.

## II.  OFFENSE CONDUCT

Defendant Kodama worked for Mutual Trading, a business engaged in the import, export, and distribution of Japanese brands of food, alcoholic beverage and restaurant supplies, as its vice president, chief financial officer, and head of accounting.  (PSR ¶ 11).[2]

---

[2] The statement of facts set forth in the Offense Conduct section cite to the applicable paragraph number of the PSR.  These same facts regarding defendant's offense conduct derive from the

Defendant's job duties included supervising Mutual Trading's finances and employees whose duties including tracking accounts payable, accounts receivable, cash flow, bank deposits and withdrawals, and financial accounting.  (PSR ¶ 12).  Defendant reported directly to the president of Mutual Trading.  Defendant directly supervised co-schemer Steve Katsuya Akune,[3] who was Mutual Trading's senior accounting manager.  (PSR ¶ 13).  Co-schemer Akune was responsible for receiving checks made payable to Mutual Trading.  (PSR ¶ 13).  Akune was responsible for overseeing the accounting for those checks in Mutual Trading's books and records and then depositing those checks into Mutual Trading's bank accounts.  (PSR ¶ 13).

Defendant, together with co-schemer Akune, executed a scheme from March 2010 to February 2018 to obtain money in the custody and control of a bank account at California Bank & Trust that they fraudulently opened in the name of Mutual Trading without the knowledge and authorization of Mutual Trading.  (PSR ¶¶ 14-15).  In fraudulently opening this Mutual Trading account ("fraudulent" or "off-book" account), they falsely represented to the bank that a meeting of Mutual Trading's Board of Directors had been held at which Mutual Trading adopted a resolution authorizing the opening of the bank account, knowing that no such meeting and no such authorization had occurred.  (PSR ¶ 16).  Defendant took possession of checks mailed to Mutual Trading and fraudulently diverted these checks by directing co-schemer Akune to endorse and deposit them into the

stipulated Statement Of Facts In Support Of Plea Agreement For Defendant Hiroyuki Kodama, filed as Exhibit "B" at 20-23 of the plea agreement (CR 6).

[3] Co-schemer Akune was charged and pleaded guilty in the related case of United States v. Steve Katsuya Akune, CR 20-505-FMO, and is currently scheduled for sentencing on June 17, 2021.

3

fraudulent Mutual Trading account. (PSR ¶ 17). Co-schemer Akune took possession of these checks, and fraudulently diverted these checks by endorsing and depositing them into the fraudulent Mutual Trading account. (PSR ¶ 18).

In order to further execute and conceal the scheme, defendant and co-schemer Akune falsified Mutual Trading's books and records by: (1) failing to include any reference to the fraudulent bank account and the funds it held in Mutual Trading's books and records and (2) failing to record the deposits of checks made payable to Mutual Trading into the fraudulent Mutual Trading bank account and withdrawals made from that account, unbeknownst to others at Mutual Trading. (PSR ¶ 19).

As a result of the fraudulent scheme, defendant and co-schemer Akune embezzled approximately $2,817,691 in checks made payable to Mutual Trading into the fraudulent Mutual Trading bank account. (PSR ¶ 20). They withdrew those funds for their personal benefit and to pay personal expenses by writing checks made payable to themselves and others, purchasing cashier's checks, and transferring the funds out of the account by wire. An FBI forensic accountant[4] analyzed the fund withdrawals. For instance, defendant used the funds by directing co-schemer Akune to write checks drawn on the fraudulently opened bank account payable to defendant, including 35 checks written to defendant totaling approximately $1,121,701. (PSR ¶¶ 21-23). Co-schemer Akune used the funds to pay the balance due on his credit cards and a personal bank line of credit and to pay for expenses

---

[4] The PSR refers to an "IRS" forensic accountant who analyzed the fund withdrawals of the embezzled checks. (PSR ¶ 23). To clarify, the forensic accountant is employed by the FBI.

4

associated with his home renovation, totaling approximately $1,023.719 (PSR ¶¶ 21, 23). There were additional funds embezzled, deposited, and withdrawn from the fraudulently opened Mutual Trading account that the FBI forensic accountant did not specifically attribute directly to either defendant Kodama or co-schemer Akune, but are part of the overall loss amount of $2.8 million.[5]

## III. POST—OFFENSE CONDUCT

When Mutual Trading discovered the fraudulent scheme, defendant was terminated from employment in February 2018. (PSR ¶ 24). Mutual Trading filed a lawsuit against defendant in Los Angeles County Superior Court and defendant and Mutual Trading stipulated to a settlement agreement in which defendant would pay $1,696,021. Defendant paid $671,892.41 (about 40 percent) within six months of the agreement, but has not delivered the remaining 60 percent ($1,024,128.59) so Mutual Trading obtained a $1,024,128.59 judgment against defendant in June 2019. (PSR ¶ 7, n.1). The plea agreement in this criminal case provides that payments defendant has made to Mutual Trading in connection with his civil settlement may be credited against the amount of restitution owed in this criminal case, subject to the approval of the Clerk's Office. (PSR ¶ 7; CR 6 ¶ 6). Defendant is responsible for ensuring sufficient documentation establishing entitlement to any payment credit is provided to the Financial Litigation Section of the United States Attorney's Office. (PSR ¶ 7; CR 6 ¶ 6).

---

[5] As noted in the Post-Offense Conduct section below, defendant stipulated in a settlement agreement in the civil lawsuit brought by Mutual Trading to repay $1,696.021; co-schemer Akune agreed to repay $1,166,896.

IV.   **ADVISORY SENTENCING GUIDELINES**

The government submits that defendant's advisory sentencing guidelines calculations are those agreed to by the parties in the plea agreement, which are the same as and supported by the PSR.  In accord with the calculations of the plea agreement (CR 6 at ¶ 13), defendant's guidelines offense level is 22, prior to any variance, resulting in an advisory guidelines range of 41-51 months.

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G. § 2B1.1(a)(1) |
| Specific Offense <ins>Characteristics</ins> | | |
| Loss between $1.5-$3.5 million: | +16 | U.S.S.G. § 2B1.1(b)(1)(I) |
| <ins>Adjustments</ins> | | |
| Abuse of Position of Trust | +2 | U.S.S.G. § 3B1.3 |
| Acceptance of Responsibility | -3 | U.S.S.G. § 3E1.1(a), (b) |
| Total Offense Level: | 22 | |

In accord with the plea agreement, the government recommends a downward two-level variance, based on recognition of defendant's early acceptance of responsibility by his agreement to hold these proceedings by VTC which lessens the burden on the court system, to an offense level of 20, resulting in an advisory guidelines range of 33-41 months.  (CR 6 at ¶ 3(e)).

V.   **CONCURRENCE IN THE FINDINGS OF THE PRESENTENCE REPORT**

The government concurs in the findings and offense level calculations of the Presentence Report prepared by the Probation Office in this case which are the same as the plea agreement between the parties.

# VI.   GOVERNMENT'S ANALYSIS OF THE SECTION 3553(a) FACTORS AND SENTENCING RECOMMENDATION

The following discussion addresses the other § 3553(a) factors beyond those taken into account already by the advisory sentencing guidelines.

## A.   Advisory Sentencing Guidelines

As noted above, the government and defendant jointly agreed in the plea agreement that the advisory offense level is 22 (41-51 months).

## B. Analysis of the Section 3553(a) Factors

In addition, the plea agreement contemplated a two-level downward variance from offense level 22 (41-51 months) to offense level 20 (33-41 months) for extraordinary acceptance of responsibility.

The seriousness of the overall scheme to embezzle funds from his corporate employer, the magnitude of the loss in excess of $2.8 million, the repeated and multiple thefts of his employer's funds for about eight years, and the abuse of defendant's position of trust in his roles as vice president, chief financial officer, and head of accounting where he embezzled checks by directing the senior accounting manager, co-schemer Akune, to endorse and deposit corporate funds into the fraudulently opened off-book Mutual Trading bank account and then directed Akune to write checks payable to defendant, weigh in favor of imposing a substantial custodial sentence.  In particular, defendant both supervised co-schemer Akune, who was responsible for: (a) overseeing the accounting of checks in the books and records and (b) depositing those checks into the bank accounts, but defendant also directed Akune's involvement in the

7

embezzlement.  (PSR ¶ 36).  Both defendant and co-schemer Akune received a two-level enhancement for abuse of a position of trust, but defendant's breach of trust was more egregious.

While not definitive, the Guidelines range provides the starting point for finding a reasonable sentence and must then be considered with the factors set forth in 18 U.S.C. § 3553 (a).  See United States v. Cantrell, 433 F.3d 1269, 1279 (9th Cir. 2006).  "To comply with the requirements of Booker, the district court must have sufficiently considered the Guidelines as well as the other factors listed in § 3553(a).  This requirement does not necessitate a specific articulation of each factor separately, but rather a showing that the district court considered the statutorily-designated factors in imposing a sentence."  United States v. Nichols, 464 F.3d 1117, 1125 (9th Cir. 2006) (quoting United States v. Knows His Gun, 438 F.3d 913, 918 (9th Cir. 2006)).

The Section 3553(a) factors are as follows:

1) The nature and circumstances of the offense and the
   history and characteristics of the defendant;

2) The need for the sentence imposed –

    (A)  To reflect the seriousness of the offense, to
    promote respect for the law, and to provide just
    punishment for the offense;

    (B)  To afford adequate deterrence to criminal
    conduct;

    (C)  To protect the public from further crimes of the
    defendant; and

8

            (D)   To provide the defendant with needed educational

              or vocational training, medical care, or other

              correctional treatment in the most effective manner;

3) The kinds of sentences available;

4) The kinds of sentence and the sentencing range established for the offense and the defendant as set forth in the Sentencing Guidelines;

5) Any pertinent policy statement issued by the Sentencing Commission;

6) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

7) The need to provide restitution to any victims of the offense.

See 18 U.S.C. § 3553(a).  The government believes that the factors set forth in 18 U.S.C. § 3553(a) suggest a substantial period of custody and that such a sentence would be "sufficient, but not greater than necessary" to comply with the purposes enumerated in 18 U.S.C. § 3553(a)(2), discussed further below.  18 U.S.C. § 3553(a).

**A.   18 U.S.C. § 3553 (a)(1)**

18 U.S.C. § 3553 (a)(1) requires the Court to consider the nature and circumstances of the offense and the history and characteristics of defendant.

Defendant's offense was serious, long-lasting, and resulted in substantial harm to his employer.  Defendant's role was essential. Because of defendant's and co-schemer Akune's roles at the company, the embezzlement was difficult for the company to detect.  By essentially stealing checks made payable to his company and diverting

them into an off-book bank account, defendant's criminal conduct was integral to a scheme to defraud his employer of more than $2.8 million.  Given defendant's position at the company as vice president, chief financial officer, and head of accounting, combined with his directing co-schemer Akune to divert the embezzled checks into a fraudulently opened off-book bank account, defendant appears to be the primary instigator of the crime, in addition to financially benefitting directly to approximately at least $1,696,021, the amount defendant stipulated to pay in the civil settlement with Mutual Trading.  (PSR ¶ 23, 7, n.1).  Taking into account the extent and scope of the fraud, the loss, the length of time of the embezzlement, defendant's receipt and fraudulent diversion of embezzled funds in his capacities as vice president, chief financial officer, and head of accounting and as immediate supervisor of co-schemer Akune whom defendant directed to further execute and cover up the fraud, along with defendant's use of the funds for personal use, which factors are accounted for the advisory guidelines calculations, a substantial sentence of imprisonment is appropriate as sufficient but not greater than necessary sentence to accomplish the goals of sentencing.

**B.    18 U.S.C. § 3553(a)(2)**

18 U.S.C. § 3553(a)(2) requires the Court to consider the need for the sentence to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of defendant, and to provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. The government respectfully submits that a substantial custodial

10

sentence (1) will appropriately reflect the seriousness of the offense and promote respect for the law; (2) will deter future criminal conduct from both the defendant and others without being greater punishment than necessary; and (3) will serve to protect the community.

In mitigation, and supporting the two-level downward variance recommended by the government are defendant's early and extraordinary acceptance of responsibility, including his agreement to proceed by way of VTC for all court proceedings, recognition that defendant repaid, subject to verification, a substantial portion of the civil settlement with Mutual Trading (in short, defendant repaid about 24 percent of the criminal restitution amount of $2,817,691), prior to defendant becoming aware of the criminal investigation, and defendant's lack of prior criminal offenses, stable residential and employment history, and low likelihood of recidivism.

## C.   Restitution

In his plea agreement, defendant agreed to pay full restitution. The government requests that the Court order the restitution to be paid to Mutual Trading in the amount of $2,817,691, with credit of any prior payment subject to approval of the Clerk's Office. (PSR ¶ 25).

The government recommends restitution be "due and payable immediately" and subject to monthly installment payments.  More than nominal monthly payments can be made based on the following financial resources available to defendant.  (PSR ¶¶ 89).  Defendant has not met his burden to show an inability to pay.  18 U.S.C. § 3664(d)(3) and (e).  Defendant and his wife live with their son and daughter-in-law and do not pay any rent, but besides not paying for housing, they

make other monthly expenditures some of which should go, at least in part, towards monthly restitution payments, namely, they pay groceries and supplies for six people ($1,750), utilities ($150), cable ($238), vacation ($200), salon services ($100), pet food ($100), and unexpected expenses ($150).  (PSR ¶ 89).[6]

### D.  Government Sentencing Recommendation

The government respectfully requests that this Court find that defendant's advisory sentencing guideline offense level (pre-variance, post-acceptance) is 22, the same as the plea agreement; grant a two-level downward variance to offense level 20, consistent with the plea agreement, for defendant's extraordinary acceptance of responsibility; and find that defendant's advisory sentencing guideline range is 33-41 months.  To the extent the Court believes that any of the mitigating factors identified in the Probation Recommendation Letter are not already taken into account in the government's evaluation, the government defers to the Court to fashion a sentence that appropriately balances the mitigating and aggravating factors in this case, taking into account -- on the one hand -- the substantial harm caused by defendant's offense to financially benefit himself, defendant's breach of trust as vice president, chief financial officer, and head of accounting, and

---

[6] The Probation Office takes into account defendant's wife's anticipated financial needs during defendant's potential custodial sentence in concluding that defendant should make only nominal restitution payments.  (PSR ¶ 103).  However, there are additional financial resources for support available in that: (a) defendant and his wife have substantial cash assets in a joint account (PSR ¶¶ 89, 91, 100), (b) defendant has a substantial variable annuity for a guaranteed income stream (PSR ¶ 99), and (c) defendant's wife receives monthly Social Security income.  The PSR also noted that defendant's wife may have a separate bank account for which information was not provided.  (PSR ¶ 96, n. 13).

directing an employee who directly reported to him to participate in the embezzlement as a co-schemer and -- on the other hand -- defendant's low risk of recidivism, and acceptance of responsibility, including partial restitution in the civil settlement, which factors the government believes have been sufficiently taken into account in the guidelines calculation and post-variance section 3553 evaluation.

**VII. CONCLUSION**

Based on the foregoing reasons, the government respectfully requests that the Court:

a)   find that defendant's post-acceptance and pre-variance advisory guidelines offense level, consistent with the plea agreement, is 22;

b)   grant a two-level downward variance to offense level 20 for the reasons stated above, consistent with the plea agreement, resulting in an overall post-variance sentencing range of 33-41 months;

c)   impose a meaningful sentence in custody that appropriately balances the mitigating and aggravating factors in this case;

d)   order payment of: (1) restitution in the amount of $2,817,691 to be paid to his former corporate employer; and (2) a $100 special assessment for the count of conviction; and

e)   order defendant shall notify: (i) the Court of any material change in defendant's ability to pay, including without limitation, increases in wages, income, or assets; and (ii) the Financial Litigation Section of the United States Attorney's Office for the Central District of California before transferring any interest in real property, owned directly or indirectly by defendant.

## CERTIFICATE OF SERVICE

I, **Brenda Gervais**, declare:

That I am a citizen of the United States and a resident of or employed in Los Angeles County, California; that my business address is the Office of United States Attorney, 312 North Spring Street, Los Angeles, California 90012; that I am over the age of 18; and that I am not a party to the above-titled action;

That I am employed by the United States Attorney for the Central District of California, who is a member of the Bar of the United States District Court for the Central District of California, at whose direction I served a copy of:

GOVERNMENT'S COMBINED CONCURRENCE IN THE FINDINGS OF THE PRESENTENCE INVESTIGATION REPORT

☐ Placed in a closed envelope for collection and inter-office delivery, addressed as follows:

☒ Placed in a sealed envelope for collection and mailing via United States mail, addressed as follows:

☐ By hand delivery, addressed as follows:

☐ By facsimile, as follows:

☐ Via email, as follows:

☒ By Federal Express, as follows:
United States Probation & Pretrial Services
U.S. Probation Officer Eduardo Cervantes
Edward R. Roybal Federal Building and U.S. Courthouse
255 East Temple Street, Suite 1410
LA, CA 90012

This Certificate is executed on **May 26, 2021**, at Los Angeles, California. I certify under penalty of perjury that the foregoing is true and correct.

*Brenda Gervais*
Brenda Gervais
Legal Assistant