CUAUHTEMOC ORTEGA (Bar No. 257443)
Federal Public Defender
EMILY J.M. GROENDYKE (Bar No. 264102)
(E-Mail: Emily_Groendyke@fd.org)
Deputy Federal Public Defender
321 East 2nd Street
Los Angeles, California 90012-4202
Telephone: (213) 894-2854
Facsimile: (213) 894-0081

Attorneys for Defendant
HIROYUKI KODAMA

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. CR 20-624 FMO |
| Plaintiff, | **HIROYUKI KODAMA'S POSITION ON SENTENCING; EXHIBITS** |
| v. | **Sentencing Date: June 17, 2021** |
| HIROYUKI KODAMA, | |
| Defendant. | |

# I. INTRODUCTION

Hiroyuki Kodama appears for sentencing after pleading guilty to Count One of the Information, charging him with bank fraud. In the plea agreement, Mr. Kodama admitted to depositing checks payable to his employer, Mutual Trading, into an unauthorized bank account created for this purpose. While this terrible decision took on momentum and continued for years, Mr. Kodama ultimately acknowledged his misconduct and worked to make amends, even selling his home to repay Mutual Trading. Now, he is focused on his family, as a full-time caregiver for his grandchildren. The United States Probation and Pretrial Services Office ("USPO") has recommended a sentence of 24 months. (Dkt. 26, Recommendation Letter.) Given Mr. Kodama's acceptance of responsibility, diligent efforts to repay the victim, lack of criminal history, and the high risk of severe illness from imprisonment during the ongoing COVID-19 pandemic, a sentence of one day of prison followed by a period of supervised release would be sufficient but not greater than necessary to accomplish the goals of sentencing.

## II. THE APPROPRIATE SENTENCE

**A.    Mr. Kodama's prompt acceptance of responsibility, remorse, and efforts to make amends justify a below-Guidelines sentence.**

Mr. Kodama admits his wrongful conduct; he deeply and sincerely regrets his crime. (Ex. A.) When confronted by Mutual Trading, Mr. Kodama promptly acknowledged his misconduct—before any criminal investigation was underway. He entered a civil settlement, agreeing to take substantial steps to make amends to the company. He sold his home and used the proceeds to pay over half a million dollars of the judgment. He transferred his Mutual Trading stock holdings, valued at $85,000, back to

1

the company. As a result of these efforts, he ultimately repaid almost $672,000 to Mutual Trading, as the Government acknowledges. (Dkt. 29, Gov. Pos. Paper at 6.) The balance remaining on the civil judgment is the result of Mr. Kodama's inability to pay, rather than any unwillingness. He and his wife now live with their son, relying on their social security benefits and the income from an annuity account. When he is able, he hopes to get a job, possibly as a tour guide for Japanese tourists, to continue his efforts to repay Mutual Trading. (Ex. A.)

Similarly, when approached by law enforcement, Mr. Kodama was cooperative and honest, acknowledging his responsibility and remorse in his initial interview. He since entered a pre-charge agreement to plead guilty. (Dkt. 6, Plea Agreement.)

## B.  Mr. Kodama provides help and support to his family, who depend on him.

Mr. Kodama is dedicated to his family and plays a key role for them. He and his wife, Nobuko, care for their twin two-year-old grandchildren, Avery and Jordon, so that both parents can work. They also do the grocery shopping and cook for the family. (Ex. B, C, E.) But Nobuko often also requires his care: she is a breast cancer survivor and also suffers hyperthyroidism that sometimes leaves her bed-ridden. (Ex. B.) Thus Mr. Kodama sometimes cares for both the twin toddlers and his wife. The essential role that Mr. Kodama plays for his wife, son, and granddaughters further justifies a sentence below that recommended by Probation and sought by the Government. *See* USSG § 5H1.6 (below-Guidelines sentence may be appropriate when a longer sentence will cause a "specific loss of essential caretaking. . . to the defendant's family").

2

**C.      A sentence of one day in prison followed by supervised release is sufficient due to the particular risk posed by COVID-19 to Mr. Kodama.**

The risk of severe illness or even death that Mr. Kodama in particular would face in prison is another reason that a lengthy sentence of imprisonment would be more harsh than necessary to promote the goals of sentencing.

"Factors like inescapably close quarters, constant turnover, and high rates of people with preexisting health conditions make prisons and jails ideal settings for contagion."[1] In the United States, rates of infection with COVID-19 are about three times higher among people who are incarcerated than the general public.[2] Federal prisons have not been immune. The disease spread rapidly through federal facilities; at least 39% of federal prisoners are known to have been infected.[3]

Mr. Kodama is 67 years old and will turn 68 just days after his sentencing. His age puts him at particular risk of severe illness or death if he catches COVID-19. Indeed, 80% of reported COVID deaths in the United States have been in adults 65 and older. According to the Centers for Disease Control and Prevention, someone in Mr. Kodama's age group is 130 times more likely to die if infected than someone in their 20s.[4] Under the

---

[1] Emma Grey Ellis, *The Struggle to Vaccinate People in Jails and Prisons*, Wired, March 17, 2021, *available at* https://www.wired.com/story/covid-19-prisons-vaccines/ (last visited Apr. 26, 2021).

[2] *See Incarcerated and Infected: How the Virus Tore Through the U.S. Prison* System, N.Y. Times, Apr. 10, 2020, *available at* https://www.nytimes.com/interactive/2021/04/10/us/covid-prison-outbreak.html (last visited Apr. 26, 2021).

[3] *Id.*

[4] Centers for Disease Control and Prevention, COVID-19: Older Adults, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last visited Apr. 26, 2021).

current circumstances, Mr. Kodama's age and health conditions justify a sentence below the advisory guidelines.

Mr. Kodama also has health conditions that put him at additional risk. He has longstanding high blood pressure (Ex. D), which can increase the odds of getting severely ill from COVID-19.[5] Finally, Mr. Kodama also has a history of smoking (Ex. D), which the CDC also recognizes can make someone more likely to get severely ill from COVID-19.[6]

Although Mr. Kodama has been vaccinated, this precaution does not eliminate the risk that incarceration would pose to him. As the pandemic continues, variants of the COVID-19 virus continue to emerge; indeed, carceral environments provide an "ideal environment" for viral mutations.[7] The efficacy of existing vaccines to prevent illness from variants is not clear, but some studies suggest reduced efficacy.[8] Moreover, immunity to COVID-19 (from infection or vaccination) is temporary and potentially brief. While current studies are optimistic (showing effectiveness against some variants

---

[5] Centers for Disease Control and Prevention, COVID-19: People with Medical Conditions, *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited Apr. 26, 2021).

[6] *Id.*

[7] Benjamin A. Barsky, J.D., M.B.E., Eric Reinhart, B.A., Paul Farmer, M.D., Ph.D., and Salmaan Keshavjee, M.D., Ph.D, *Vaccination plus Decarceration — Stopping Covid-19 in Jails and Prisons*, New England Journal of Medicine (Apr. 29, 2021), *available at* https://www.nejm.org/doi/full/10.1056/NEJMp2100609#article_references (last visited June 7, 2021).

[8] Harvey, W.T., Carabelli, A.M., Jackson, B. et al., *SARS-CoV-2 variants, spike mutations and immune escape*. Nat Rev Microbiol (2021). *available at* https://doi.org/10.1038/s41579-021-00573-0 (last visited June 7, 2021) ("Spike amino acid substitutions and deletions that impact neutralizing antibodies are present at significant frequencies in the global virus population, and there is emerging evidence of variants exhibiting resistance to antibody-mediated immunity elicited by vaccines.").

4

continuing through six months)[9], the CDC continues to put it simply: "We don't know how long protection lasts for those who are vaccinated."[10]

## D.   The sentences proposed by the Government and recommended by Probation are longer than necessary to achieve the goals of sentencing.

Non-custodial sentences like probation and supervised release nonetheless impose "several standard conditions that substantially restrict [defendants'] liberty." *Gall v. U.S.*, 552 U.S. 38, 48 (2007). Compliance with these strict requirements will reflect a substantial punishment, particularly for a first-time offender.

Nor is a more substantial prison sentence necessary to promote the other goals of sentencing. Mr. Kodama has no criminal history and he has been law abiding in the years since the scheme was discovered. The fraud that Mr. Kodama committed was aberrant behavior. The U.S. Sentencing Commission has recognized that offenders with zero criminal history points have a lower recidivism rate than those with one or more points.[11] The Commission also recognizes that as a general matter older offenders are less likely to recidivate than younger ones.[12] The Government likewise recognizes Mr. Kodama's "low likelihood of recidivism." (Dkt. 29, Gov. Pos.

---

[9] *How Long Does Immunity from COVID-19 Vaccination Last?*, Healthline, Apr. 4, 2021, *available at* https://www.healthline.com/health-news/how-long-does-immunity-from-covid-19-vaccination-last#Protection-lasts-for-at-least-6-months,-likely-longer.

[10] *How Long Does Protection from a COVID-19 Vaccination Last?*, CDC Frequently Asked Questions about COVID-19 Vaccination, CDC, Mar. 12, 2021, *available at* https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html.

[11] Kyckelhahn, Tracey & Cooper, Trishia, U.S. Sentencing Comm'n, The Past Predicts the Future: Criminal History and Recidivism of Federal Offenders, 6–9 (March 2017).

[12] Hunt, Kim & Easley, Billy, U.S. Sentencing Comm'n, *The Effects of Aging on Recidivism Among Federal Offenders*, (Dec. 2017) ("The Commission found that older offenders are substantially less likely to recidivate following release compared to younger cohorts.").

5

Paper at 11.) For an older individual without any criminal history, a sentence of one day in prison followed by supervised release is sufficient to deter further criminal activity and promote respect for the law.

## III. THE PRESENTENCE REPORT AND
## THE ADVISORY SENTENCING GUIDELINES

### A.  The Advisory Guidelines Calculation

In the Presentence Investigation Report ("PSR"), the USPO has determined that the offense level under the advisory Sentencing Guidelines is 22 and the criminal history category is I, resulting in an advisory guidelines range of 41 to 51 months and supervised release for a period of 2 to 5 years. (PSR at 3.) The USPO recommends a variance from the advisory range resulting in a sentence of 24 months. (Dkt. 26, Recommendation Letter at 1-2.) Mr. Kodama does not object to the USPO's calculation of the offense level or advisory guidelines range, but submits that a below-guidelines sentence is appropriate in light of the factors discussed above.

### B.  Conditions of Supervised Release

In its recommendation letter, the USPO also recommended several conditions for Mr. Kodama's supervised release. Mr. Kodama objects to recommended condition 4, which provides that "[t]he defendant shall not be employed in any capacity wherein the defendant has custody, control, or management of the defendant's employer's funds." (Dkt. 26, Recommendation letter at 2.) This condition is overbroad. As phrased, it could bar a wide range of entry-level positions that would require making change, including work as a store clerk or as a tour guide, as he hopes to do. A condition requiring that Mr. Kodama's employment be approved by his supervising officer would be sufficient to ensure that any position he obtains is appropriate.

Finally, Mr. Kodama requests that his supervision be transferred to the District of Colorado. He resides in Denver with his family and has been supervised there throughout the proceeding. He hopes to remain there throughout any period of supervised release.

## IV. CONCLUSION

Mr. Kodama respectfully requests that the Court impose a sentence of one day of imprisonment followed by an appropriate period of supervised release.

Respectfully submitted,

CUAUHTEMOC ORTEGA
Federal Public Defender

DATED: June 7, 2021        By /s/ Emily J.M. Groendyke

EMILY J.M. GROENDYKE
Deputy Federal Public Defender

Attorneys for Defendant
HIROYUKI KODAMA

7

# EXHIBIT
# A

The Honorable Fernando M. Olguin
United States District Judge
United States Courthouse
Courtroom 6 D
350 W. First Street, 6th Floor
Los Angeles, California 90012

Dear Judge Olguin,

I was born in southern Japan. After coming to the U.S.
to study, I decided to contribute myself for the cultural
relationships between US and Japan. Therefore, I was
employed by Mutual Trading Co. in 1981, which has been
providing Japanese food since 1926 as food distributor.
I worked hard there, dreaming to spread Japanese good
food to not only in US but all over the world. The
company promoted me by devotion toward the job. I was
promoted to Assistant Manager, Manager, Assistant Vice
President and finally to Vice President during my 37
years work.

But after many years of work, I made a very big
mistake which is unacceptable and irreparable. It
ruined my whole life and my career, and I betrayed
my company, employees and my family. I am really
ashamed of myself. I am very sorry toward all the
company members, and especially to my family and my

Ex. A - 1

late parents. I regret what I've done from the bottom of my heart. I wish I could go back in time if possible but I know that I can not. During that time I completely forgot what was right and wrong things not only as company's executive but also as human. I still have keeping this regretful feeling now and I know that it will continue to the rest of my life.

All that I can do now is try to make up for what I have done. To the company, I have tried to repay my debt as much as I have been able. Now the only way to restitute to the company is to work. Right now me and my wife are babysitting our little twin grand-children who are two years old. But I hope to find a job when they start going to school. I will try to find a tour service company to be a tour guide around Denver and Rocky Mountains area toward Japanese tourists. This area has been very popular among Japanese until Covid 19 was spread. I hope disease will be gone near future.

I also regret what my crime has done to my family, especially to my wife who had breast cancer operation before and she has been sensitive physically since then. After she knew my crime, the stress of the crime has made her health worse. So, she must sometimes in bed. I really want to help my wife

Ex. A - 2

who has been supporting me during my hardest time in my life. I am also working to help my children and grandchildren, so that my son and daughter-in-law can work. I am now glad to be able to support them get going in their careers, because they've given us a place to live. Everyday I try to be a good grandfather by taking care of the two babies for their growth. I always keep in mind that this is my atonement and obligation to my family.

I'd like to devote my rest of my life to my family and the community where I am living. I'd like to restitute to the former company by working. Please give me a second chance. Thank you very much for reading this letter.

Hiroyuki Kodama

5/13/2021

Ex. A - 3

# EXHIBIT
# B

The Honorable Fernando M. Olguin
United States District Judge
United States Courthouse
Courtroom 6 D
350 W. First St. 6th Floor
Los Angeles, CA 90012

Dear Judge Olguin,

My Name is Nobuko Kodama.
I am wife of Hiroyuki Kodama. We've been married
since 1983. I have been spending a good and happy
marrige life with him, having one daughter and
one son. We met together in Tokyo and both had
a dream and passion to study English in the US.
And we did it. And we married in Los Angeles.

However, he committed unacceptable crime.
My mental and physical condition became worse
since he was procecuted. It was so shocking to me.
Since then I could not sleep well and I lost my weight
so much but many hard days continued for both of us.
We are so ashamed and we wanted to die.
But one day I realized that I would have to support
him more, otherwise no one could help us.
Of course, I understand my husband committed a sin

Ex. B - 4

and he must atone for his sin.

He has been a good husband for me and a good father for my children. Since I was told breast cancer by my doctor and made a surgery, he devoted to me more work hard for my house.

After we sold our house which was very sad and paid its money to his company for partial restitution.
We have been living in the house of my son and his wife in Denver. They are helping us to live together because we don't have no place to live.

God helped us to have grandchildren during our hardest time. This dispersed our sorrow and gave us a hope and encouraged us to live more. Our twins were born in August 2018.

While their parents are working outside my husband and I are babysitting. But taking care of two babys are hard because of my weak body.
Because my thyroid condition is up and down, the medication doesn't work sometimes. So I often have to lie on my bed.

I agree with his plan of finding a job and work for the restitution to the former company.
But now I need him to stay together.
Otherwise, it is impossible to take care of the two granddaughters by myself. We have to buy foods and cook dinner everyday for my son and daughter-in-law who works outside. I really need my husband help.

Please give us mercy.

Thank you very much.

Nobuko Kodama

5/14/2021

Ex. B - 6

# EXHIBIT

# C

The Honorable Fernando M.Olguin

United States District Judge

United States Courthouse

Courtroom 6D

350 W. First. Street, 6th Floor

Los Angeles, California 90012

My name is Kentaro Jason Kodama, currently living in Denver, Colorado. I work in a restaurant called Matsuhisa as a sushi chef.  I have been working at this restaurant since we opened in 2016. Mr. Kodama is my father so I have known him all my life. Mr. Kodama has committed a crime that he has accepted full responsibility for.  My father is a quiet and reserved person.  He's not very talkative but he's genuinely kind and thoughtful. He was born and raised in Japan in a small port town called Ibusuki. He moved to the United States in his early 20's with my mother. He studied at San Diego State University and at University of Nebraska.  My father was pretty active in his younger days and would play baseball and golf.  He would watch college football every Saturday and the NFL on Sundays.  His favorite team is the former San Diego Chargers, now the Los Angeles Chargers.  Growing up, my father was very caring but also stern.  He taught me how to play sports and other life lessons. Since he was brought up in Japan, the relationship we had is a little different from an American father and son.  We didn't talk as much as a normal father and son would. It probably had to do with both us of being introverts and in the Japanese culture the father was always the strict, non-talkative type.  I was very surprised when I found out that my father committed a crime.  He was always a by the book, very responsible person.  He's never committed a crime in the past and the only thing he got in trouble for was a speeding violation. My father is very regretful and ashamed by the crime he committed.  He has always been very unemotional but when he told me about the crime, he was in tears and very depressed.  I have noticed in the Japanese culture, when one commits a crime or does something shameful to the family, their first thought is suicide.  My father was no different.  He began to tell me he was contemplating on committing suicide.  It got to the point where it started affecting my mother as well.  She now wanted to commit suicide and my sister and I had to talk them out of it.  I believe the only saving grace for him was that my wife and I were pregnant with twins at the time.  He was in a very dark place and the only light he saw was my two little girls was about to be born.  For the past 2 years, my father has helped take care of my daughters when my wife and I are at work.  With my mother, they would go to the grocery store or the playground and help keep them entertained every day. Unfortunately, because of Covid, they had to stay indoors for the majority of last year.  Once all this is over and he finishes his sentence, my father wants to watch my daughters grow for a couple more years and then I believe he wants to move back to Japan.  He just wants to live a quiet life in his home country. My father is not innocent by no means but I would like to believe that he deserves some leniency.  He is not a bad person and unfortunately because of one big stupid mistake, everything that he achieved and worked for is gone. At the very least, he has learned from this mistake and he will never commit a crime ever again.  Thank you for taking the time to read this letter.

Regards, Kentaro Jason Kodama

Ex. C - 7

# EXHIBIT D
# SUBMITTED
# UNDER SEAL

# EXHIBIT
# E



Ex. E - 10